FILED
'97 OCT 10 PM 3:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
OCT 10 1997

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VALERIE CRUM, | }<br>} |
| Plaintiff | }<br>} |
| vs. | } CIVIL ACTION NO.<br>}<br>} CV-97-AR-1836-S |
| WATER WORKS AND SEWER BOARD OF THE CITY OF BIRMINGHAM, | }<br>}<br>} |
| Defendant | |

**MEMORANDUM OPINION**

The court has before it the motion of defendant, the Water Works and Sewer Board of the City of Birmingham ("WWSB"), for summary judgement in the above-entitled cause. Plaintiff, Valerie Crum ("Crum"), a former employee of WWSB, alleges that WWSB discharged her in retaliation for her complaint of sexual harassment and, thereby, violated the Civil Rights Act of 1964, *as amended*, the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, et seq. ("Title VII"). For the following reasons, the court determines that no genuine issue of material fact exists with respect to said claim, and, therefore, that WWSB is entitled to judgement as a matter of law on said claim.

I. *Pertinent Undisputed Facts*

Crum began working for WWSB as a Distribution Aide Clerk in March, 1972. Like all other WWSB employees, Crum was required to have an annual physical examination as a part of her employment. This annual physical examination includes a screening for drug and alcohol abuse. Under the WWSB drug policy, employees who fail one annual drug test are not terminated. However, such employees become subject to random drug screenings, and they are warned that a second positive drug test result will lead to immediate termination. The WWSB Employee Handbook explains this policy fully. (Def. Ex. 1). Crum first tested positive for drugs in May, 1992. (Def. Ex. 2). Following this incident, Crum received a warning, and she acknowledged receiving it. (Def. Ex. 4). The warning advised her of the requirements and potential sanctions imposed by WWSB's drug policy.

On or about February 10, 1995, Crum reported to WWSB officials that a fellow WWSB employee, Michael Marks ("Marks"), had sexually harassed her by touching her in an unwelcome manner. WWSB officials undertook an immediate investigation of Crum's complaint. (Def. Ex. 6 and 7). This investigation resulted in Marks's subsequent discharge.

Crum tested positive for drugs for a second time on May 28,

2

1996.  Consistent with the drug policy outlined in its Employee Manual, WWSB terminated Crum following her second drug violation on June 7, 1996.  Crum offered no example of a deviation from WWSB's "two strikes and you're out" rule.  Soon after her termination, Crum filed a discrimination charge with the Equal Employment Opportunity Commission.  She later received a right-to-sue letter from that agency.  This lawsuit followed.

## II. *Discussion*

### A. *Rule 56*

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).  The Eleventh Circuit stated the obvious when it observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994).  WWSB has invoked Rule 56.

### B. *Discovery Considerations*

As an initial matter, the court notes that Crum did not respond to WWSB's motion for summary judgment,[1] unless it was her motion filed on the day her response was due asking the court to defer ruling on the motion for summary judgment for ninety (90) days to allow further discovery. Crum claimed that she "had not had the opportunity to take any discovery; therefore, any ruling on summary judgment would be premature." (Pl. Motion to Defer Ruling on Summary Judgment ¶ 2). Crum's motion for delay provided gave no explanation as to why she had not had an opportunity to take discovery. Based on this omission and the report of WWSB's counsel that Crum had made no attempt even to initiate discovery, the court denied Crum's motion.

Although Crum may argue that this ruling as harsh, the court does not have to waive rules at a party's whim. "[I]n the modern era of summary judgment, the plaintiff is effectively required to put forth her entire case at summary judgment [in order to]

---

[1] WWSB's motion for summary judgment originally came before the court as a motion to dismiss filed on September 8, 1997. Crum did submit a brief opposing the motion to dismiss on September 11, 1997. Seeing that several arguments advanced in WWSB's motion to dismiss relied on evidentiary support, the court converted said motion to dismiss into a motion for summary judgment on September 15, 1997. Following this conversion, Crum submitted no briefs in support of her position. Nevertheless, in reaching its decision today, the court has considered Crum's brief submitted in opposition to WWSB's motion to dismiss.

4

persuade the court that a reasonable fact finder could rule in [her] favor." Robert Gregory, *One Too Many Rivers To Cross: Rule 50 Practice In The Modern Era of Summary Judgment*, 23 FLA. ST. U.L.R. 689, 692 (1996). Should a plaintiff be unable to defend a Rule 56 motion, he or she may ask the court for more time in which to conduct any needed discovery. However, a trial court should not grant such requests when they come at the eleventh hour and give no explanation for why the requesting party has done nothing within the period routinely prescribed by the court's standard submission schedule. The foregoing observation notwithstanding, the court is cognizant of its obligation under Rule 56 to consider what evidence has been submitted by the parties in the light most favorable to Crum, and it will do so.

### C. *Crum's Only Claim*

Crum makes no claim except one of retaliation. In order to establish a *prima facie* case for a retaliatory discharge, Crum must demonstrate: (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) a causal link between the protected expression and the adverse action. Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1196 (11th Cir. 1997). If Crum establishes her *prima facie* case, then the burden of production shifts to WWSB to produce

5

evidence of a legitimate, nondiscriminatory reason for making the employment decision that it did. Id. Finally, if WWSB meets this exceedingly light burden, the burden shifts to Crum to create a genuine issue of material fact as to whether the challenged employment decision was pretextual. Id.

Although WWSB concedes that Crum can satisfy the first two elements of a *prima facie* case for retaliation, it contends that she cannot satisfy the third. (Def. Br. at 3). More specifically, WWSB argues that Crum cannot demonstrate the necessary causal link between her 1995 sexual harassment complaint and the 1996 decision to terminate her. In support of this position, WWSB highlights two facts. First, WWSB took prompt remedial action when presented with Crum's complaint of sexual harassment. Second, WWSB discharged Crum some eighteen months after she made the sexual harassment complaint, and then only after she tested positive for drugs a second time. Despite this compelling evidence, the court reluctantly concludes that this particular argument is not well taken.

The Eleventh Circuit recently explained what a plaintiff must show to make out the third element for *prima facie* retaliation. The court observed:

In order to satisfy the "casual link" prong of a prima facie

6

> retaliation case, a plaintiff must, at a minimum, generally
> establish that the defendant was actually aware of the
> protected expression at the time the defendant took the
> adverse employment action. (Citation omitted). Since
> corporate defendants act only through authorized agents, in
> a case involving a corporate defendant the plaintiff must
> show that the corporate agent who took the adverse action
> was aware of the plaintiff's protected expression and acted
> within the scope of his or her agency when taking the
> action.

Raney, 120 F.3d at 1197 (citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993)). In light of this authority, Crum satisfies all three elements of a *prima facie* case for retaliation. Two facts in the record support this conclusion. First, WWSB admits that Crum made her sexual harassment complaint directly to WWSB's interim general manager, Ronald Mims. (Def. Br. at 2). Second, Ronald Mims's signature appears at the bottom of the "Personnel Action Request Form" authorizing Crum's discharge. (Def. Ex. 5). These two facts reveal that WWSB, through its corporate agent, was "actually aware" of Crum's 1995 sexual harassment complaint when it terminated her employment in 1996. Although it is a close question, the distance in time between the sexual harassment complaint and the adverse employment decision is not enough, standing alone, to interrupt the arguable chain of causation; however, a jury probably would

find otherwise.[2] Because Crum has barely demonstrated the causal link, the court concludes that she has made her *prima facie* case for retaliation.

However, the court also concludes that WWSB has clearly articulated a legitimate, nondiscriminatory reason for its employment action. WWSB says that it fired Crum because she failed a second drug test. The record clearly indicates that, after her positive drug test in 1992, WWSB warned Crum that a second drug violation would result in her immediate discharge. (Def. Ex. 3). As such, WWSB has overwhelmingly met its burden of production and has rebutted the presumption of retaliation created by Crum's *prima facie* case. See Id. at 1196.

---

[2] The court found no Eleventh Circuit case articulating a specific time period after which a causal connection is less likely to exist. However, there is ample authority supporting the proposition that, where anything other than a relatively short period of time elapses between the protected expression and the adverse employment decision, no causal connection exists. See Valdez v. Mercy Hospital, 961 F.2d 1401, 1403 (8th Cir. 1992) (holding no causal connection exists where six months passed between protected expression and discharge); Leslie v. Mobile Transit Authority, 963 F.Supp. 1142, 1149 (S.D.Ala. 1997) (finding that passage of more than one year did not permit inference of causal connection); Balletti v. Sun-Sentinel Co., 909 F.Supp. 1539, 1549 (S.D.Fla. 1995) (finding that passage of six months did not permit inference of causal connection); Juarez v. Ameritech Mobile Communications, Inc., 746 F.Supp. 798, 804 (N.D.Ill. 1990) (finding no causal connection where six months elapsed), aff'd, 957 F.2d 317 (7th Cir. 1992); Maldonado v. Metra, 743 F.Supp. 563, 568 (N.D.Ill. 1990) (finding no causal connection where five months elapsed); Reeves v. Digital Equipment Corp., 710 F.Supp. 675, 677 (N.D.Ohio 1989) (finding no causal connection where three months elapsed); Brown v. A.S.D. Computing Center, 519 F.Supp. 1096, 1116-17 (S.D.Ohio 1981) (finding no causal connection where four months elapsed), aff'd sub nom., Brown v Mark, 709 F.2d 1499 (6th Cir. 1983).

In order to survive summary judgment at this point, Crum must establish that her employer's asserted reason for her termination was a pretext for retaliation. In assessing this aspect of Crum's claim, this court's role is very specialized. As the Eleventh Circuit recently explained:

> When deciding a motion by the defendant for judgment as a matter of law in a [retaliation] case in which the defendant has proffered nondiscriminatory reasons for its actions, the district court's task is a highly focused one. The district court must, in view of all the evidence, determine whether the plaintiff cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's "legitimate reasons were not what actually motivated its conduct." (Citation omitted). <u>The district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence</u>." (Citations omitted). However, once the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's prima facie case taken together with rejection of the employer's explanations for its action. <u>At that point, judgment as a matter of law is unavailable</u>.

<u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997)(emphasis supplied). Using this standard, the court concludes that Crum has not shown that WWSB's proffered reason is "unworthy of credence," and that WWSB is, therefore, entitled to summary judgment.

Crum attempts to undermine the credibility of WWSB's

9

articulated reason for discharging her in three ways. First, she alleges that, because she was not using drugs at the time, the results of her second positive drug test were inaccurate. (Pl. Motion to Defer Ruling on Summary Judgment ¶ 6). This assertion, even if true, does nothing to further her claim of pretext. Whether Crum actually violated WWSB's drug policy is irrelevant; it is enough that WWSB believed that she did. As the Eleventh Circuit explained in <u>Nix v. WLCY Radio/Rahall Comm.</u>, 738 F.2d 1181, 1187 (1984):

> Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules. . . . Title VII is not a shield against harsh treatment in the workplace. Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, <u>a reason based on erroneous facts</u>, or for no reason at all, as long as its action is not for a discriminatory reason.

(Emphasis supplied). Consequently, absent some showing that WWSB acted in a discriminatory manner or deliberately created false evidence of drug use, the assertion that Crum's second positive drug test results were inaccurate does not create a genuine issue of fact.

Second, Crum asserts that, following her sexual harassment complaint, WWSB began testing her for drugs more frequently. Again, this allegation, even if true, does not undermine the

10

credibility of WWSB's articulated reason for its decision. The record indicates that, as a result of Crum's positive drug test in 1992, WWSB advised her that she would be subject to "unannounced <u>random</u> [drug] testing <u>at any time</u> during the continuation of [her] employment." (Def. Ex. 3) (emphasis supplied). In effect, random drug tests became a term and condition of Crum's employment, and WWSB had a right to test her as often as it wished. Therefore, this mere criticism of defendant does not create a genuine issue of material fact regarding pretext.

    Finally, Crum tries to create a fact issue by pointing to a television newscast that purportedly aired on November 26, 1996. In this newscast, a former WWSB official allegedly stated, in part, that WWSB would falsify drug test results in order to rid itself of employees it wanted to fire. (Crum Decl.). Obviously, in order for these alleged statements to create a genuine issue of material fact, Crum must offer the statements for the truth of the matter asserted in them. However, in so doing, the statements become clear examples of inadmissible hearsay and, therefore, are incapable of creating a fact issue

for trial.[3]

The statements raise a second evidentiary concern. For the statements to be probative of pretext, one must accept the inference that, since, *arguendo*, WWSB falsified drug test results in the past, it is possible that it did so in Crum's case. In other words, Crum is trying to rely on a prior bad act to suggest action in conformity therewith. It is well settled that such evidence is irrelevant, prejudicial, and inadmissible. Again, in light of this second evidentiary concern, it is clear that the alleged statements cannot create a fact issue for trial. Seeing no other genuine issue of material fact for trial, the court concludes that WWSB is entitled to judgment as a matter of law.

---

[3] Crum might argue that the alleged statements are nonhearsay as admissions of WWSB. To qualify as admission, however, the statement must have been made by an agent of WWSB. As Crum's declaration makes clear, a <u>former</u> WWSB official made the alleged statements. As a former employee, the declarant cannot be an agent of WWSB. Therefore, the statements do not qualify as admissions.

### III. *Conclusion*

The court will enter a separate and appropriate order consistent with the conclusions reached in this memorandum opinion.

DONE this 10th day of October, 1997.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE